UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                Case No. 24-cr-20522-
                Hon. JONATHAN J.C. GREY

vs.


GERALD DUGGAN,

          Defendant.
_____/
MICAH WALLACE
DOJ - EDMI - USAO
211 W. Fort St.,Ste 2001
Detroit, MI 48226
313-226-9591
Email: Micah.Wallace@usdoj.gov

SANFORD A. SCHULMAN
Attorney for Defendant:
     GERALD DUGGAN
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
saschulman@comcast.net
_____/


## DEFENDANT, GERALD DUGGAN'S SENTENCING MEMORANDUM

NOW COMES the Defendant, GERALD DUGGAN, by and through his attorney, SANFORD A. SCHULMAN, and states in support of his SENTENCING MEMORANDUM as follows:

## OVERVIEW AND SUMMARY

The defendant, GERALD DUGGAN, pled guilty to One Count in the Indictment charging him with One Count of Possession of Child Pornography in violation of 18 USC Sec. 2252A(a)(5)(B) and 2252A(b)(2) (R. 1, Indictment, PgID 1-5).  After serving years in prison and nearly half of a ten-year term of supervised release without any violation or issues, Gerald Duggan was found in possession of images and videos containing child pornography. There is no evidence that Gerald has ever had any physical contact with any minors.  There have never been any inappropriate text messages or emails with any minors.

The case presents a significant setback for Gerald who at the time of his arrest on this case was employed as a commercial painter for twenty-five years and had been employed full-time. Indeed, Gerald was employed at LaFontaine Warehouse in Livonia where he was working full-time as well as overtime, earning $18.50 an hour.

2

In our society and the current legal system, an individual who has an addiction to drugs, who is sentenced to jail or prison and while on probation reoffends by using drugs again is often allowed to seek and participate in drug treatment.  It is treatment that we recognize is in the best interest of the individual and society.  Even though drug addiction is the common cause of some of the most egregious crimes in our society.  But we do not recognize treatment as an alternative to someone like Gerald.  For the most part he is removed from society and is warehoused.

A psychological evaluation was provided by Dr. Kathleen Kruse which is attached. Dr. Kruse provided the following diagnoses:

1. Bipolar I Disorder, per history

This diagnosis is based on the following:

a. Mr. Duggan's self-reported history of the following mood episodes:

i. Manic episodes, or distinct periods of abnormally and persistently irritable mood and increased energy. These episodes lasted up to one week at a time. He reported associated symptoms of decreased need for sleep beyond his chronic insomnia, being more talkative with pressured speech, subjective experience of racing thoughts, and

excessive involvement in activities that have high potential for excessive consequences.

ii. Depressive episodes, or distinct periods of depressed mood with loss of interest in pleasurable activities. These episodes lasted more than two weeks at a time. He reported associated symptoms of poor motivation and loss of energy. While these episodes do not meet full criteria for a Major Depressive Episode as Mr. Duggan did not endorse at least five symptoms of Major Depressive Disorder, it is only necessary to meet criteria for a manic episode to diagnose Bipolar I Disorder.

b.  Mr. Duggan reported that mood episodes have caused marked impairment in occupational functioning. More specifically, he described difficulty maintaining employment and financial stability prior to receiving psychiatric treatment with mood stabilizing medications.

c.  Mr. Duggan was previously diagnosed with Bipolar I Disorder by past psychiatric providers, including Dr. Luay Haddad, beginning in 2001.

d. Mr. Duggan reported improvement in mood episodes with prescription of mood stabilizing medication, namely Lithium. He

4

continues to take this medication given its benefit, as well as an antidepressant medication Wellbutrin.

e. Mr. Duggan's episodes are not attributable to another medical condition or the physiological effects of a substance.

The specifier per history is used because symptoms of a mood disorder were not reported or directly observed during the course of my evaluation.

2. Pedophilic Disorder, nonexclusive type

This diagnosis is based on the following:

a. Mr. Duggan's self-report of recurrent sexually arousing fantasies involving sexual activity with prepubescent children. These fantasies include sexually arousing thoughts and use of pornographic material involving prepubescent children.

b. Interpersonal difficulty related to these sexual fantasies, specifically past prosecution for possession of pornographic material involving prepubescent children.

c. Past possession of child-related items, including a toddler-sized doll and multiple pairs of children's underwear. In the Presentence Investigation Report from July 2011, Mr. Duggan reported that these

items were a "failed experiment," and "an attempt to add something tangible to the fantasy."

Dr. Kruse also indicated that Mr. Duggan experienced a drowning event at age 20 months requiring resuscitation and a medically-induced coma for three weeks. Mr. Duggan's history is suggestive of mild cognitive decline in attention, executive function (mental processes to help with planning and execution of tasks), and social cognition in childhood, as evidenced by special education services and supports in his school environment. In addition, there is no evidence of interference with independence in everyday activities, such as paying bills, managing medications, and maintaining employment, which would be more consistent with Major Neurocognitive Disorder. However, I am unable to say with reasonable medical certainty that Mr. Duggan meets criteria for Minor Neurocognitive Disorder given lack of standardized neuropsychological testing data or records of cognitive functioning and development prior to the drowning event in toddlerhood.

In the end, Dr. Kruse opined, with reasonable medical certainty, that Gerald Joseph Duggan meets criteria for Bipolar I Disorder, per history; Pedophilic Disorder, nonexclusive type; Alcohol Use

Disorder, in sustained remission, in a controlled environment; and Cannabis Use Disorder, in sustained remission, in a controlled environment. Mr. Duggan has benefitted from pharmacologic treatment of his mood disorder with a combination of a mood stabilizer and an antidepressant, it is my recommendation that pharmacologic management be continued to prevent recurrence of manic and depressive episodes. Given the diagnosis of Pedophilic Disorder, he should receive treatment for this disorder through a designated Sex Offender Treatment Program if found guilty of the charges in his current case.

Gerald has accepted full responsibility, pled guilty without filing any motions or delays.  The advisory guidelines are just above 7 years at 87 to 108.  However, the statutory required minimum sentence is 120 months.  This Court cannot impose a sentence below 120 months despite the fact that the average sentence of similar defendants with similar guidelines would be 103 months.

Defense would submit that any custodial sentence beyond 120 months would serve no real purpose.  There is no empirical evidence to suggest that such sentences deter others.  Additional prison beyond the decade and a half will serve no purpose but to unnecessarily punish and Gerald has clearly been punished already.

## INTRODUCTION AND OVERVIEW

A.     Nature and Circumstances of GERALD DUGGAN's Offense and His History and Characteristics

For reasons that likely involve issues stemming from unresolved mental health issues including bi-polar disorder, Gerald once again has found himself viewing child pornography.  He has never produced it, shared it, sought to meet children or had any inappropriate contact.  His viewing of the materials has now likely resulted in him returning to prison for another significant period of time.

## Characteristics of GERALD PAUL DUGGAN

Those that know Gerald agree he is a simple and kind individual who avoids conflict and often acts consistent with an immature adolescent.  He graduated from high school and attended community college and has maintained full time employment.  Gerald

has never been married, has no children, but is very close with his

sisters and his family.

While this Court must still correctly calculate the guideline

range, Gall v. United States, 552 U.S. 38, 49 (2007), it may not treat

that range as mandatory or presumptive, id. at 51; Nelson v. United

States, 555 U.S. 350, 352 (2009), but must treat it as "one factor

among several" to be considered in imposing an appropriate

sentence under § 3553(a).  Kimbrough v United States, 552 U.S. 85,

90 (2007).  The Court must "consider all of the § 3553(a) factors,"

"make an individualized assessment based on the facts presented,"

id. at 49-50 and explain how the facts relate to the purposes of

sentencing.  Id. at 53-60; Pepper v. United States, 131 S. Ct. 1229,

124243 (2011).  The Court's "overarching" duty is to "'impose a

sentence sufficient, but not greater than necessary' to accomplish the

goals of sentencing."  Id. at 101; Pepper, 131 S. Ct. at 1242-43.

A key component of Supreme Court law, designed to ensure

that the guidelines are truly advisory and constitutional, is the

authority of this Court to disagree with a guideline as a matter of

policy.  Because "the Guidelines are now advisory . . ., as a general

matter, courts may vary [from Guidelines ranges] based solely on

policy considerations, including disagreements with the Guidelines."
Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted) (citing
Rita v. United States, 551 U.S. 338, 351 (2007) (district courts may
find that the "Guidelines sentence itself fails properly to reflect §
3553(a) considerations").

GERALD DUGGAN has acknowledged that his conduct was
wrong and illegal.  He understands that it is still a serious crime to
even view this material in the solitude of his own home despite the
fact that he did not produce it, request anyone  create it, or have any
contact with any minors on the internet or have physical contact with
any minors..

It is clear that Gerald suffers from mental health issues that he
will continue to struggle with his entire life.  Given the mandatory
minimum, the facts of this case, the clear deterrence and the
personal history, a sentence of 10 years is sufficient but not greater
than necessary.

Need for Adequate Deterrence, 18 U.S.C. § 3553(a)(2)(B)

The empirical evidence is unanimous that there is no
relationship between sentence length and general or specific
deterrence, regardless of the type of crime.  See Andrew von Hirsch

et al., Criminal Deterrence and Sentence Severity: An Analysis of
Recent Research (1999) (concluding that "correlations between
sentence severity and crime rates . . . were not sufficient to achieve
statistical significance," and that "the studies reviewed do not provide
a basis for inferring that increasing the severity of sentences
generally is capable of enhancing deterrent effects"); Gerald Tonry,
Purposes and Functions of Sentencing, 34 Crime and Justice: A
Review of Research 2829 (2006) ("[I]ncreases in severity of
punishments do not yield significant (if any) marginal deterrent
effects. . . . Three National Academy of Science panels, all appointed
by Republican presidents, reached that conclusion, as has every
major survey of the evidence."); David Weisburd et al., Specific
Deterrence in a Sample of Offenders Convicted of White-Collar
Crimes, 33 Criminology 587 (1995) (finding no difference in
deterrence for white collar offenders between probation and
imprisonment); Donald P. Green & Gerald Winik, Using Random
Judge Assignments to Evaluate the Effects of Incarceration and
Probation on Recidivism among Drug Offenders, 48 Criminology 357
(2010) (study of over a thousand offenders whose sentences varied
substantially in prison Gerald and probation found that such

variations "have no detectable effect on rates of re-arrest," and that

"[t]hose assigned by chance to receive prison Gerald and their

counterparts who received no prison Gerald were re-arrested at

similar rates over a four-year Gerald frame").

    The Sentencing Commission has found that "[t]here is no

correlation between recidivism and guidelines' offense level. While

surprising at first glance, this finding should be expected.  The

guidelines' offense level is not intended or designed to predict

recidivism."  U.S. Sent'g Comm'n, Measuring Recidivism:  The

Criminal History Computation of the Federal Sentencing Guidelines,

at 15 (2004) ["U.S. Sent'g Comm'n, Measuring Recidivism"].  See

also Part IV.A.3, infra.  Acording to "the best available evidence, . . .

prisons do not reduce recidivism more than noncustodial sanctions."

Francis T. Cullen et al., Prisons Do Not Reduce Recidivism:  The

High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

    Nor does lengthy imprisonment of sentences associated with

child pornography have any deterrent or preventive effect on the

production or dissemination of child pornography.  There is no

evidence "remotely supporting the notion that harsher punishment

would reduce the flow of child pornography on the Internet."

Beiermann, 599 F. Supp. 2d at 1103; id. at 1103-04 ("[W]e cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet," and while deterrence is a "laudable" goal, it "is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of."). The Commission acknowledges that there is no social science research supporting the theory that criminal punishments "have affected commercial or non-commercial 'markets' since the advent of the Internet." Child Porn Report at 98.

Need for Incapacitation, 18 U.S.C. § 3553(a)(2)(C)

A primary assumption underlying Congress's actions with respect to the child pornography guideline has been that possessors of child pornography are likely to sexually abuse children.  This belief is contrary to the empirical research in general and is unjustified based on the evidence in this case.

Current empirical research demonstrates that "first time offenders of child pornography appear to be very low risk of sexual recidivism [of any kind], in contrast to those with any prior or concurrent criminal convictions or those who engage in other sexual

offending (e.g., attempted or actual contacts with a child, production

of child pornography)," Written Statement of Gerald C. Seto, Ph.D.,

C. Psych. before the U.S. Sent'g. Comm'n at 4 (Feb. 15, 2012), and

"online offenders who had no history of contact offenses almost never

committed contact sexual offenses."  Gerald C. Seto et al., Contact

Sexual Offending by Men With Online Sexual Offenses, 23 Sexual

Abuse 124, 137 (2011); see also Written Statement of Richard

Wollert, Ph.D. before the U.S. Sent'g. Comm'n, at 14-17, 21-22 (Feb.

15, 2012) (reporting that in his study of 72 federal child

pornography offenders under supervision, including three production

offenders, with varying criminal histories, two were arrested for

possessing child pornography and none were arrested for a contact

offense within four years);  Helen Wakeling et al., Comparing the

Validity of the RM 2000 Scales and OGRS3 for Predicting Recidivism

by Internet Sexual Offenders, 23 Sexual Abuse: J. Res. & Treatment

146, 164 (2011) (child pornography offenders "do not, as a group,

present a significant risk of escalation to contact sexual offenses.");

Jérôme Endrass et al., The Consumption of Internet Child

Pornography and Violent Sex Offending, 9 BMC Psychiatry 43 (2009)

(study that followed 231 child pornography offenders for six years

after initial offenses found that only two offenders (0.8%) committed a contact offense, and only nine offenders (3.9%) committed a non-contact sexual offense, and concluded that "the consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses . . . at least not in those subjects without prior convictions for hands-on sex offenses"); Gerald C. Seto & Angela W. Eke, The Criminal Histories and Later Offending of Child Pornography Offenders, 17 Sexual Abuse 201, 207-08 & tbl.III (2005) (finding that 1.3% of those who had committed child pornography offending only recidivated with contact sex offenses; "our finding does contradict the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children."); L. Webb et al., Characteristics of Internet Child Pornography Offenders: A Comparison with Child Molesters, 19 Sexual Abuse 449, 463 (2007) (finding Internet-only offenders "significantly less likely to fail in the community than child molesters," and concluding that "by far the largest subgroup of internet offenders would appear to pose a very low risk of sexual recidivism").

As one district court recently put it, "the empirical literature [] generally concludes that there is little—if any— evidence of a direct

correlation between viewing child pornography and the viewer's commission of 'contact' sexual offenses."  Marshall, 870 F. Supp. 2d at 492.

The Commission's research also demonstrates that employment, education, and family ties and responsibilities all predict reduced recidivism, see U.S. Sent'g Comm'n, Measuring Recidivism at 12-13 & Ex. 10; U.S. Sent'g Comm'n, Recidivism and the "First Offender" 8 (2004), as does other research. For sex offenders, cognitive behavioral therapy substantially reduces recidivism.  U.S. Dep't of Justice, Center for Sex Offender Management.

In the case at bar, the defendant, GERALD PAUL DUGGAN, is a convicted felon who must register as a sex offender for a considerable period of time.  The advisory sentencing guidelines are actually lower than the mandatory minimum.  The Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act of 2003 would continue to increase the mandatory minimums.  In the pending case, the offense of Sexual Exploitation of a Child starts with a base level of 18 points and adds 13 additional points.  Despite the advisory guidelines, this court must also consider the factors listed in 18 USC Sec 3553

LETTERS IN SUPPORT

Attached is the report and recommendation of Dr. Kathleen Kruse as well as a letter from Gerald.  His family continues to be very supportive and will never give up on Gerald.  They have seen how hard he works and how good he is to others.  Gerald's letter provides insight into his character and that with the proper counseling and guidance, Gerald hopes to return to his family and community and continue to live the simple life that he had carved out for himself if that is ever a possibility.

F.    Requested Sentence

The defense would urge this court to consider a sentence of 10 years.  In light of the advisory sentencing guidelines, the acceptance of responsibility, the absence of significant deviate sexual history, lack of any evidence that suggests pedophilia characteristics, his employment history, his self-described feelings of shame and remorse regarding this offense; acceptance of responsibility for this offense; acknowledgment of the harmful results of engaging in similar activity involving children and their vulnerability; his intellectual ability to benefit from appropriate and long-term therapeutic intervention; access to supportive family members who can become allies in

behavioral monitoring and recovery; and his willingness to comply with the court's orders.

Gerald is also requesting this court recommend any custodial sentence be served in the Milan Federal Institution, closer to his family.

Respectfully submitted,


<u>s/Sanford A. Schulman</u>
SANFORD A. SCHULMAN
Attorney for Defendant:
     GERALD DUGGAN
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
313-963-4740
Email: saschulman@comcast.net

Date:  October 26, 2025